any objection offered to its introduction.

## Medcalf, et al. v. Hensley, et al.

(Decided March 24, 1914.)

### Appeal from Clay Circuit Court.

1. Land—Action to Recover Land and Value of Timber—Commissioner's Deed—Admissibility of.—In an action to recover land and the value of timber cut from it, it was error, at the conclusion of plaintiff's testimony, to peremptorily instruct the jury to find for defendants on the ground that the commissioner's deed introduced was inadmissible for the reason that it was not endorsed, "examined and approved" by the court, when it had been introduced without objection to it. The ruling of the court in disregarding it would have been proper had there been

2. Land—Action to Recover Land and for Value of Timber Taken—Evidence.—From subsequent conveyances three-fourths of the land descended to plaintiffs and they made out a case for three-fourths of the timber sufficient to put defendants upon their defense and the case should have gone to the jury, although plaintiffs may have to resort to another action for division of the land. While defendants as tenants in common, might hold possession until partition, yet, if they commit waste they must respond for a proportional part to the other co-parcener.

D. K. RAWLINGS, H. C. FAULKNER for appellants.

RAWLINGS & WRIGHT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellants are the heirs of Levy Medcalf, and brought this action to recover 200 acres of land, and more than $2,000.00 worth of timber alleged to have been wrongfully taken from it by the appellees. The record discloses that Levy Medcalf, Margaret Medcalf, Lucinda Medcalf and Rebecca Hensley were the children and heirs at law of one John Medcalf who surveyed, and took preliminary steps to procure a patent from the Commonwealth, covering the land in controversy. The patent was issued in 1867 to his children above named, John Medcalf having died in the meantime. Rebecca Hensley was then married to the appellee, Henry Hensley. It seems that John Medcalf owned other lands, and in 1867, by some sort of proceedings in the Clay County Court, there was an attempted partition of his lands between the four children. In this way there was allotted to Margaret Medcalf her share of her father's real estate, and this share included the 200 acres covered by the patent. All of her land, including the patent, was accurately and minutely described in the deed which appellants introduced, after the patent, as a link in their chain of title. Since the effect of this deed, and its form, are material questions in the case, we quote from it the following parts bearing upon the controversy:

"This indenture made and entered into this 4th day of May, 1868, by and between George W. Nantz, Felix G. Gilbert and Alex Chastain, Commissioners of the Clay County Court, in the case of Sarah Medcalf, widow of John Medcalf, dec'd, against the heirs of John Medcalf, now pending in the said court for the partition of land, of the first part, and Margaret Medcalf, daughter and one of the heirs of John Medcalf, deceased, of the second part, Witnesseth, that for and in consideration of his relationship to her father, John Medcalf, dec'd, and by virtue of the authority vested in the party of the first part by the orders and judgments of the Clay County Court made and rendered in the aforesaid case, the party of the first part has this day partitioned the lands of the aforesaid, John Medcalf, dec'd, between his children and heirs, and assigned to each respectively his or their portion in said land and they do by these presence in pursuance of the orders of court hereby convey by deed to the party of the second part all of the following described lands belonging to the estate of John Med-

calf, dec'd, lying and being in the county of Clay and
State of Kentucky on the Red Bird waters and bounded
as follows, to-wit.''

Then follows a description of the two surveys, the
second of which is the 200-acre survey patent to John
Medcalf's heirs as above shown. The deed was signed
and acknowledged by the three commissioners before the
county court clerk, and thereupon recorded. Then fol-
lows in evidence a deed from Margaret and her husband,
Robert or Blevins Lovins, to G. W. Nantz. This deed
was executed in December, 1876, and from the description
of the several tracts then conveyed, we quote the follow-
ing concerning the patent, which was the only land in
controversy:

"Also all of their interest in a two hundred-acre
survey made in the name of John Medcalf heirs lying in
Clay County, Kentucky, on the dividing ridge between
the Red Bird and Hector creek the waters of Kentucky
river and bounded as follows, to-wit: Beginning at a
hickory and two black gums six poles from the Newberry
Gap on the E. side of the ridge also all of their interest
in the widow's dowery of the John Medcalf deceased
lying on Hector's Creek in Clay County., Ky., on the
waters of Red Bird waters of the South fork of the Ken-
tucky river and bounded as follows, to-wit.''

In 1877 Nantz conveyed this land with the same de-
scription to Lucinda Medcalf, and in the same year Lu-
cinda Medcalf conveyed it, using the same description,
to Levy Medcalf, the father of appellants, now deceased.
The appellee, on cross-examination of one of plaintiff's
witnesses, introduced as evidence a deed by same commis-
sioners to Lucinda, executed pursuant to their attempt
to partition John Medcalf's lands. Except the lands de-
scribed, the deeds to Lucinda and Margaret above re-
ferred to are identical. These two partition deeds were
the only evidence that deeds of the same import were
also made to Levy Medcalf and Rebecca Hensley, the
other two John Medcalf heirs, and which tended to show
that all of the heirs accepted the division, and have ac-
quiesced therein. Aside from the facts above mentioned,
however, all of the proof in the case went to the question
of damages for trespass. The appellee by proper plead-
ing admitted that he, and persons authorized by him,
had cut and removed all the timber referred to, but jus-
tified it by claim of ownership of the land. Before the
trial, Hensley filed a pleading disclaiming title to 14

acres of the land, and the proof shows that two of the trees were cut from it. At the conclusion of plaintiffs' evidence, the court, upon motion, peremptorily instructed the jury to find for the defendants. Complaining of this action of the court, the plaintiffs appeal.

In this case the question was not one of sufficiency of evidence, but whether there was any evidence in support of appellants' claim. If there was any, the case should have gone to the jury. From the written opinion of the lower court, and from briefs of counsel, we gather that the court was of opinion that plaintiffs failed to make out a case because there chain of title was broken in two respects. (1) The commissioner's deed to Margaret Medcalf did not show that it was examined by the court, neither was there introduced in evidence any county court record showing the appointment or qualification of the commissioners. For this reason the deed was deemed inadmissible as evidence. (2) The subsequent conveyances to Nantz, Lucinda Medcalf, and Levy Medcalf were void for uncertainty in the description of the 200-acre patent boundary.

Section 398 of the Civil Code provides as follows:

"A conveyance by a commissioner shall not pass any right, until it has been examined and approved by the court—which approval shall be endorsed on the conveyance, and recorded with it."

So far as the commissioner's deed is concerned, the ruling of the lower court, in disregarding it, would have been eminently proper had there been any objection offered to its introduction. The record, however, discloses the fact that no objection was interposed; on the contrary the defendants, on cross-examination of plaintiffs' witnesses introduced a companion deed in identical terms executed to another one of the heirs, in support of their claim of uncertainty of description in subsequent deeds. It was too late, after plaintiffs' evidence was closed, to make the objection, for plaintiffs were thereby deprived of the opportunity of supporting the deed by the orders of the county court, if such there were, and in that way making the deed competent evidence. In the case of Kentucky Coal Lumber Co. v. Smith, 149 Ky., 794, in an action for trespass, the defendant *objected* to the introduction of a commissioner's deed upon the ground that it did not show upon its face the approval and endorsement of the court, and was not therefore a recordable instrument or competent evidence. The court's records,

however, were introduced showing that the court did actually examine, approve, and certify the deed. The court said on that phase of the case:

"But the failure of the judge to endorse his approval on the deed does not render it invalid, or deprive it of its recordable character, where there is an order in the action reciting that it has been examined and approved by the court. In the latter event, a copy of the deed, together with a copy of the order showing that the deed was produced in court and acknowledged by the commissioner, and was examined and approved by the court, is sufficient to make out a prima facie case of the regularity of the deed, and to authorize its introduction as evidence of title."

Objection was also urged to the commissioner's deed in the case above referred to, as in the case at bar, because it failed to recite the names of the parties whose title was conveyed, as directed by section 399 of the Code, which is as follows:

"It shall be necessary for the conveyance to be signed by the commissioner only, without affixing the names of the parties whose title is conveyed; but the names of such parties shall be recited in the conveyance."

In deciding this question adversely to the defendants, the court in the case supra quoted the following from Sears v. Colley, 148 Ky., 445:

"As section 397 provides that a conveyance made by the commissioner shall pass to the grantee the title of all the parties to the action or proceeding, and section 399 directs that the name of such parties shall be recited in the conveyance, it is manifest that the purpose of the latter provision was to have the deed show who were the parties to the action, so that the deed itself would be complete evidence of title. In the absence, therefore, of such recital in the deed, the purchaser, or anyone claiming through him, could show from the record of the proceedings who were the parties to the action, and whose title passed by the conveyance. We, therefore, conclude that that part of section 399 with reference to the deed's reciting the names of the parties to the proceedings is directory and not mandatory, and that the title of all parties to the action passes under section 397, by virtue of the deed made by the commissioner, even though the names of the parties be not recited in the deed."

From these considerations it is seen that the lower court erred in its ruling as to the commissioner's deed,

when same was introduced without any objection to it.

Appellees insist, however, that the court properly gave the peremptory instruction because the other deeds referred to were void for uncertainty of description. An objection of this character ordinarily comes from one claiming to be an innocent purchaser for value, but since the court took the case from the jury before appellee was put upon his defense, it is not known how he claims title. All the facts proven by plaintiff indicate, however, that the appellee, Hensley, aside from the description given in the patent, and in the deeds referred to, was not ignorant concerning same, nor of the claim of the parties holding thereunder. His wife was the beneficiary in one of the commissioner's deeds, she being one of the four heirs, and he was married to her at the time. The description, however, given in the deed is ample to put any purchaser upon notice. The tract is identified as the 200-acre survey, made in the name of John Medcalf's heirs, and located on the dividing ridge between Red Bird and Hector Creek in Clay County on the waters of the Kentucky river. The land in controversy is identified with the land above referred to, and being the only land on said dividing ridge. The beginning corner of the patent is named: "At a hickory and two black gums six poles from the Newberry Gap on the east side." This beginning corner is not only named in the patent and all the deeds, but the proof shows is standing and marked to this day. Under repeated rulings of this court, this description is sufficient to pass title.

It is next insisted that the deeds subsequent to the commissioner's deed did not show *what interest* Margaret Lovins, Nantz, and Lucinda Medcalf conveyed, notwithstanding the fact that the deeds plainly recite that they conveyed *all* their interest in the 200-patent survey. The only justification for any other conclusion is drawn from a statement made by one of the plaintiffs' witnesses, and which was brought out on cross-examination, that she heard the appellee, Hensley, say about a year before the suit was filed, when witness complained to him for cutting the timber, that he had purchased an interest in the patent survey from Margaret Lovins. From this it is argued that the court may infer that Hensley was claiming some interest by purchase, and that hence, when Margaret Lovins conveyed, "all her interest," she impliedly admitted that she had theretofore sold some in-

terest, and only intended to convey to Nantz the residue. This argument, and any such conclusion based upon it, is not only far fetched, but not tenable. Clearly, Margaret, Nantz, and Lucinda conveyed *dll their interest* in the patent, and there is no warrant for any conclusion that she owned, or claimed to own any less than all of it. Under this state of facts the appellants insist that when the lower court held the commissioners deed, upon which they relied, insuffcient, and assuming for the present that they are unable to support it by the court records, as above indicated, then the title remains in the four children of John Medcalf, that is, Levy Medcalf, father of appellants, owned an undivided one-fourth, and by the conveyances from Margaret, and Lucinda back to Levy Medcalf, he acquired from each of them an undivided one-fourth, and in that way is entitled to, and owns an undivided three-fourths interest in it. But, in rejecting the contention of appellants, the lower court seems to have concluded that the commissioners deed, although invalid for all other purposes, is good enough to defeat this claim to three-fourths because, as the court says, all of the children of John Metcalf took deeds of partition of the same character as Margaret Medcalf, and these four John Medcalf heirs having lived up to that division, and acquiesced in it for more than thirty years, it is now too late, according to the reasoning of the lower court, for the plaintiffs to claim that their father at his death owned any interest in the part that was allotted to Margaret Medcalf.

It will be observed that their right, if the commissioners deed is invalid, does not rest upon the fact that it was allotted to Margaret Medcalf, but from the subsequent conveyances together with his inheritance, from Margaret and Lucinda whereby the title to three-fourths of it vested in him, Levy Medcalf. It is perfectly plain that, in any view of the question, the plaintiffs made out a case for three-fourths of the timber value, sufficient to put the appellees upon their defense, and it should have gone to the jury, although plaintiffs might have to resort to another action for a division of the land. While defendants, as tenants in common, might hold possession until a partition, yet if they commit waste they must respond for a proportional part to   the other co-parcener.

For these reasons the judgment is reversed for proceedings consistent herewith.